## DUCKWORTH *et al.*, trustees, *v.* OCEAN STEAMSHIP COMPANY OF SAVANNAH.

1. Where a will was executed in England and probated both in that country and in this State, and the testator, after appointing certain persons residing, respectively, in England and in Georgia, executors and trustees, all the persons designated as executors being also appointed trustees, and conferring upon them various powers and duties, provided as follows: "And I declare that my trustees resident in England may leave to my trustees or trustee for the time being resident in America the entire management of the aforesaid trusts, and the entire execution of the aforesaid powers, . . . so far as they respectively are, from the situation of the property or for any other reason, to be performed in America, and that my trustees or trustee for the time being resident in America may leave to my trustees or trustee for the time being resident in England the entire management of the aforesaid trusts, and the entire execution of the aforesaid powers, . . . so far as they are, from the situation of the property or for any other reason, to be performed in England. . . . But this present proviso shall not have the effect of authorizing such trustees or trustee, respectively, to exclude from such management and execution the other trustees or trustee, in case and so far as they or he shall be desirous of interfering in such management": *Held*, that the trustees or trustee in each country were authorized to exercise their powers and duties under the will as to the property of the testator situated in the country of their or his residence, without express assent thereto, or participation therein, on the part of the trustees or trustee residing in the other country.
2. Where two of such executors and trustees resident in Georgia qualified as such and one of them afterwards removed to England and ceased to be a resident of this State, the remaining one could lawfully exercise, as to property of the testator in this State, such powers with reference thereto as were conferred by the will upon all the executors and trustees.
3. The will in question having declared that the persons appointed executors and trustees (designating them as "my trustees") might carry out the trusts and exercise the powers therein specified as if they were absolute owners of the estate, and having also conferred upon them the fullest and most ample authority as to all their acts and doings in the premises, it was within the scope of these powers to have the bonds of a private corporation, purchased with funds of the estate, registered in the

name of the estate, and to change such registry whenever desired.

4. This being so, and the will further providing that "no person paying money or transferring property to my trustees or otherwise dealing with them shall be bound or concerned to enquire as to the necessity or propriety of anything done or authorized by my trustees, or be affected by any irregularity or impropriety in anything done or authorized," it was within the power of a single trustee, when he was for the time being the only one residing in this State, to cause the registration of certain bonds which had been registered in the name of the estate, to be so changed as to render the same payable to bearer; and although such trustee signed as executor the instrument by which the company was directed to make the transfer, it was nevertheless binding upon the estate of the testator and its beneficiaries; and as against them, the officers of the company, especially in view of the provision of the will last quoted, were protected in allowing the transfer to be made. This is true even though this particular act, under the terms of the will, may have been one specially relating to duties as trustee and not pertaining to the office of executor. Whether or not, by the terms of the will, such executor and trustee was specifically invested with power to do such act in his capacity as executor, inasmuch as the authority was clearly delegated to this person, the law will attribute the act to the proper authority, though not professedly done in the capacity of trustee.

March 16, 1896. Argued at the last term.

Complaint for damages. Before Judge Falligant. Chatham superior court. June term, 1895.

*George W. Owens* and *Saussy & Saussy*, for plaintiffs. *Lawton & Cunningham*, for defendant.

Atkinson, Justice.

The plaintiffs sued in their capacity as trustees under the will of William Battersby. The testator resided in England. By his will he named certain persons resident in England, and certain persons resident in this State, as executors and trustees to hold the property and dispose of it in accordance with the directions contained in the will. He does not appear to have distinguished between those duties which were appropriate to be performed by the persons as executors, or those which might have been appropriately

performed as trustees of any property which may have remained in their hands in that capacity after it had been disposed of by them as executors. By the 5th, 6th and 7th items of the will, he makes bequests of certain specific legacies, and directs that they be paid to the trustees. He directs, by the 10th item of his will, that the trustees shall, out of moneys to be produced by the sale provided for by the 9th item of the will, pay or provide for the payment of his funeral and testamentary expenses, and debts, and the legacies and annuities given by the will, and thereafter shall stand possessed of the residue of the money in trust, etc. In referring to the persons named, he speaks of them as executors and trustees indifferently. He disposes of a considerable amount of property, some of it being in Great Britain, some of it in the United States. In conferring powers and imposing duties upon the persons named as trustees and executors, he seems to have classified them, assigning to those resident in this country the duty of executing the trust created by the will as to the property located here, and assigning to those resident abroad the duty of likewise disposing of the property situated there; and to that end, in the 24th item of his will, he declares as follows: "And I declare that my trustees resident in England *may leave* to my trustees or trustee for the time being resident in America the entire management of the aforesaid trusts, and the entire execution of the aforesaid powers, except the power of apportionment and allotment, so far as they respectively are, from the situation of the property or for any other reason, to be performed in America, and that my trustees or trustee for the time being resident in America may leave to my trustees or trustee for the time being resident in England the entire management of the aforesaid trusts and the entire execution of the aforesaid powers, except as aforesaid, so far as they are, from the situation of the property or for any other reason, to be performed in England; it being my desire that such trustees or trustee

respectively shall not be answerable for omitting to attend to such trusts, or to join in the execution of such powers in America and England respectively, and that all purchasers and others may deal with such trustees or trustee respectively alone. But this present proviso shall not have the effect of authorizing such trustees or trustee respectively to exclude from such management and execution the other trustees or trustee, in case and so far as they or he shall be desirous of interfering in such management." Broad discretionary powers were conferred upon the trustees in the disposition and management of the affairs of the estate. They were authorized by the testator generally, "to act with reference to my residuary estate, and the trusts and powers of this my will as if my trustees were absolute owners, their decision being, in all cases of doubt, dispute or difference, binding and conclusive on all persons beneficially interested whether under disability or not, and notwithstanding that such persons or some of them may for the time being be unborn or unascertained. And I expressly declare that my trustees shall have absolute discretion in the exercise and execution of the powers and trusts hereby created or herein expressed or implied, and that the concurrence of any person or persons beneficially interested shall not be required in any sale, partition, exchange, lease, mortgage or other transaction, nor shall the dissent or opposition of any such persons or person have any effect, and no person paying money or transferring property to my trustees or otherwise dealing with them shall be bound or concerned to enquire as to the necessity or propriety of anything done or authorized by my trustees, or be affected by any irregularity or impropriety in anything so done or authorized."

At the time of the execution of the will, two of the executors and trustees named resided in this State, the others in England. It appears that under the powers thus conferred, those trustees resident in America, on behalf of the estate of the testator, had become possessed of certain bonds

issued by the defendant, the Ocean Steamship Company, and had caused them to be registered as the property and in the name of "the estate of William Battersby." Subsequently, at the request of one of the executors named, the other not being then in this country, the Ocean Steamship Company permitted such bonds to be transferred upon the books of the company, so as to make them payable to bearer. Thereupon the bonds so registered in the name of the estate of Battersby were appropriated and converted to his own use by such executor. Being lost to the estate, the remaining trustees brought an action to recover their value from the Ocean Steamship Company, alleging a breach of duty in that company, in that it permitted the change in registry, which caused bonds registered as property belonging to the estate of Battersby to appear as if they were registered in the name of the bearer generally. There is no evidence in the record, and it was not claimed upon the trial, that the Ocean Steamship Company had actual notice of any wrongful purpose upon the part of the executor in causing the registry of the bonds to be changed; so that, being innocent in this respect, the case of necessity turns upon the question as to whether the trustee or executor had the power, under the will, to direct the change, and thus justify the act of the company.

Upon the trial of the case the instructions given by the circuit judge amounted to a practical direction of a verdict for the defendant; and whether or not such instructions were correct depends upon the construction which should be placed upon the will of the testator.

1. As will be seen by reference to the extract from the 24th item of the testator's will, as hereinbefore quoted, it was provided that the trustees in England "may leave" to the trustees residing in America the entire management and execution of the trusts contained in the will, in so far as they might have reference to and affect property situated in America. We think the testator intended, from the

use of this expression, to confer these powers upon the American trustees and executors, without reference to any express or affirmative action upon the part of their foreign cotrustees and coexecutors giving assent to such management. Had the term "may leave" been employed by the testator in an active rather than in a passive sense, he would have selected words more apt to the expression of that idea, and he would have conveyed his meaning by the use of an expression something like this: "my executors and trustees resident in America, by and with the assent of my executors and trustees residing in England," or, "my executors and trustees residing in America, my executors and trustees residing in England consenting." In such a case actual affirmative assent by the foreign executors and trustees would be necessary to give validity to a dormant power expressed in the will. The power would not have been complete without the assent of the coexecutors and cotrustees. But the language used, we think, more reasonably implies a purpose in the testator to endow the several classes of trustees with a valid subsisting power to execute the trust, the exercise of this power being dependent upon their own will, and not necessarily upon the assent of the foreign coexecutors and cotrustees. This construction is borne out by the further provision in the same item, that it should not be construed so as to prevent the foreign trustees from participating in the execution of the trust touching the American property, and *vice versa*, because if the power were a dormant one and could be awakened into activity only by the assent of the foreign executors and trustees, this latter provision would be altogether unnecessary, for by withholding assent either of the respective classes of trustees and executors could defeat at any time any effort upon the part of their cotrustees and coexecutors to prevent their participation in the execution of the trust. Thus this provision to prevent exclusion seems to recognize the fact that, independently of affirmative action upon the part of

their fellows resident abroad, the trustees resident in America should proceed with the execution of the trust in so far as concerned the property immediately committed to their care, and *vice versa*. We are thus led to the conclusion that the power was vested in the American trustees to execute the trust touching the property located in America, without the express assent or participation of their foreign cotrustees and coexecutors in the act. We have thus far dealt with the question as to whether the assent of the foreign executors or trustees was necessary to give force to the power of the American executors or trustees.

2. We will now inquire whether the powers thus conferred could be well exercised by one of such trustees. Looking to the same item of the will, it will be seen that the testator, in conferring the powers, uses the language, "I declare that my trustees resident in England may leave to my trustees or *trustee* for the time being resident in America the entire management of the aforesaid trust, and the entire execution of the aforesaid powers, except the power of apportionment and allotment, so far as they respectively are, from the situation of the property or for any other reason, to be performed in America," or *vice versa*. The use of both the singular and plural numbers in speaking of the trustees would imply that the testator had in mind a contingency which might and did thereafter in fact arise. He recognized the possibility that a time might come when his estate would be represented, by reason of the death or absence of the nominated trustees in each or either of the respective countries, by a single trustee, and it is therefore that he uses the expression "trustees or *trustee*" for the time being resident in the two countries respectively. The exercise of this power by a single trustee in either of the countries respectively named was dependent upon his being at that time the sole representative of the trust estate resident in such country; and therefore, one of the named trustees resident at the time of the execution of the will in this

country having subsequently returned to England, leaving the trustee whose conduct is now under review the only resident representative of the trust estate in this country, it was competent for him to exercise all of the powers conferred by the terms of the trust.

3-4. As we have heretofore seen, the will, in speaking of the named persons as trustees and executors, does not distinguish between those duties enjoined upon them in the one or the other capacity. It confers upon them, in their capacity as trustees, some powers and imposes upon them some duties which, under our law, would more appropriately devolve upon them in their capacity as executors; but in nominating them, it names them in the dual capacity of "trustees and executors." The only specific duty which appears to have been imposed upon them in their single capacity of executors was that of receiving a certain legacy bequeathed to each of them who should participate in proving the will, but throughout its entire context the will treats these persons as the accredited representatives of the estate. They were, so to speak, ministers plenipotentiary in so far as their conduct affected the interest of the testator's estate, or the interest of any person claiming under the will. They were authorized to generally act with reference to the residuary estate, and the trusts and powers contained in the will, as if they were the *absolute owners*, their decision being in all cases of doubt or dispute absolutely conclusive on all persons beneficially interested. He declared that such trustees, in dealing with the property committed to their care, should have absolute discretion in the exercise and execution of the powers and trusts created by the will, and all such as might be implied therefrom. It provided that the concurrence of any person or persons beneficially interested shall not be required at any sale, partition, exchange, lease, mortgage, or other transaction, and that the dissent or opposition of any such person could be of no effect. It was further provided, that no person

paying money or transferring property to the trustees, or
otherwise dealing with them, should be bound or concerned
to inquire as to the necessity or propriety of anything done
or authorized by such trustees, nor should they be affected
by any irregularity or impropriety in anything so done or
authorized.    An instrument conferring broader discre-
tionary powers upon trustees or executors has never before
come under our observation; and in the exercise of such
powers, there is scarcely room to doubt that a trustee who
was lawfully exercising them could, with the moneys of the
estate, purchase bonds by way of investment, cause them
to be registered in the name of the estate, and transfer them
at his pleasure.    Even if the terms of the will admitted of
a doubt as to whether the person, whose alleged infidelity
resulted in the injuries which are the basis of this action,
had the power as executor to direct the change in the reg-
istration of these bonds, yet the power was conferred upon
him *nominatim*, and there could not be the slightest doubt
that in his character as trustee he had the power which he
in fact exercised.    This being true, that other principle of
the law would make valid his act: that if a given power be
conferred upon a named person who acts with respect to
the subject-matter in a dual capacity, if in the exercise of
the power in one capacity the act be authorized, and in the
other unauthorized, the act done by him will be referred to
the power and not to the capacity in which he professes to
act, and will therefore be upheld.    If, however, the power
is conferred upon trustees generally, they not being named,
the contrary would be true; so that when we regard this
transaction in the light of the powers conferred by the will,
we cannot doubt that the single trustee remaining resident
in this country had full power to execute the trust therein
provided, and that a third person, having no actual notice
of a fraudulent intent, is protected against the consequences
of the wrongful act of one in whom the testator himself re-
posed such implicit and unbounded confidence.    This leads

us to the conclusion, that the court did not err in refusing the new trial, and the judgment is accordingly

*Affirmed.*